ROTHENSIES, Collector of Internal Revenue, to Use of UNITED STATES, v. EDWIN J. SCHOETTLE CO. et al.

No. 18986.

District Court, E. D. Pennsylvania.

Aug. 29, 1939.

On Motions for New Trial April 5, 1940.

J. Cullen Ganey, U. S. Atty., of Philadelphia, Pa., and James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe, Courtnay C. Hamilton, Leon F. Cooper, and Michael Gould, Sp. Assts. to the Atty. Gen., all of Washington, D. C., for plaintiff.

Schnader & Lewis, of Philadelphia, Pa. (Gilbert W. Oswald, of Philadelphia, Pa., of counsel), for defendants.

KALODNER, District Judge.

This is an action at law. Jury trial was waived and the case was heard before the Court on pleadings, stipulation of facts and proofs.

The plaintiff is Walter J. Rothensies, Collector of Internal Revenue for the First Collection District of Pennsylvania, to the use of the United States of America.

The defendants are Edwin J. Schoettle Company, a Pennsylvania corporation, and the Secretary of Banking of the Commonwealth of Pennsylvania, receiver of the now closed Central Trust and Savings Company.

The suit is on an abatement bond given by the defendant Schoettle as principal, and the Central Trust and Savings Company as surety, on May 4, 1923, to Blakely

D. McCaughn, (then) Collector of Internal Revenue for the First Collection District of Pennsylvania. The abatement bond was given to satisfy the collection of an assessment by the Commissioner of Internal Revenue of $33,786.67 additional income and excess profit taxes for the year 1917 against the defendant Schoettle. The additional assessment was made in March, 1923. Following the assessment demand was made for payment by the then Collector of Internal Revenue McCaughn. To avoid distraint proceedings for the collection of the tax, the defendant Schoettle, after filing a claim for abatement, entered its bond with the then Collector, conditioned for the payment of the tax after consideration of the claim for abatement. The Central Trust and Savings Company, now in possession of the Secretary of Banking of the Commonwealth of Pennsylvania, signed the bond as surety.

After consideration of the claim for abatement, the Commissioner of Internal Revenue abated a portion of the tax and reduced the assessment from $33,786.97 to $19,991.60. As against this action of the Commissioner, the defendant Schoettle filed a protest claiming that no tax was due. After consideration of the protest, the Commissioner denied it. Thereafter, upon creation of the U. S. Board of Tax Appeals, an appeal was filed to the said Board. The Board of Tax Appeals in its decision reported in Edwin J. Schoettle Co. v. Com'r, 13 B.T.A. 950, considered only the question of the Statute of Limitations with respect to the collection of the tax, and after limiting its opinion to that one point (based upon stipulation of counsel), found that judgment should be entered in the proceedings before it for the defendant. The Board did not pass upon the merits of the tax claim.

Subsequently, this action was brought by Rothensies, the incumbent Collector of Internal Revenue, to the use of the United States, upon the bond given at the time the claim for abatement was filed, on the theory that the bond constituted a separate cause of action and that the defendant was liable thereon, irrespective of the fact that the Statute of Limitations then barred any action directly for the collection of the tax claim.

Several defenses are raised by the defendants with respect to this action. The defenses may be summarized as follows:

(1) That the legal plaintiff, Rothensies, the present Collector, is not the proper party plaintiff, and that the action should have been brought in the name of the former Collector of Internal Revenue, namely, McCaughn, who was named as the obligee in the bond;

(2) That the bond was executed under a mutual mistake of law;

(3) That the bond was given under duress;

(4) That the condition of the bond has been satisfied by the application of a partial credit by the Collector, on account of taxes for a subsequent year.

Separate additional defenses on behalf of the surety will be referred to later.

After consideration of the various defenses raised, and a study of the record, I am convinced that judgment must be entered for the plaintiff against both defendants, and that the defendant Schoettle's motion for summary judgment must be and is hereby denied.

As to the first mentioned of the defenses that Rothensies is not the proper plaintiff:

The bond, which is the basis for this action, names as obligee "Blakely D. McCaughn, Collector, First District, Pennsylvania." The bond recites the fact that there has been an assessment of income tax and excess profits tax for the year 1917 by "the Collector of Internal Revenue for the 1st Dist. of Penna." The condition of the bond is that "if the principal shall on notice and demand by the Collector duly pay any part of such tax found by the Commissioner to be due * * * then this obligation is to be void * * *."

McCaughn ceased to be Collector for the First District of Pennsylvania on December 31, 1927. At the time this action was commenced (December, 1935) there had already been several successors to the office of Collector for the First District of Pennsylvania, and the incumbent in office was Rothensies.

The defendant Schoettle contends that since this action is brought upon an instrument under seal that the strict common law rule applies that only one who is a party to a contract under seal may sue thereon and that consequently only McCaughn, the obligee, could bring this suit.

Counsel for defendants refers to the case of Greene County for use of, v. Southern Surety Company, 292 Pa. 304, 141

A. 27. See, however, later cases of the Pennsylvania Supreme and Superior Courts, such as Concrete Products Company v. United States Fidelity and Guaranty Company, 310 Pa. 158, 165 A. 492; Commonwealth v. Great American Indemnity Company, 312 Pa. 183, 192, 167 A. 793; and Philipsborn v. 17th and Chestnut Holding Corporation, 111 Pa.Super. 9, 169 A. 473.

If this were a question of first impression in this District, I might discuss the question at greater length, but the precise point has already been ruled upon by this Court in the case of McCaughn, Former Collector of Internal Revenue, v. Union Paving Company et al., D.C., 60 F.2d 657, 658. In the latter case Judge Dickinson ruled that where a suit is brought upon a bond for the payment of taxes, suit should be brought in the name of the incumbent Collector at the time litigation is commenced, rather than in the name of the Collector named as obligee in the bond. In that case the Court granted leave to amend so that the incumbent Collector would be named as legal plaintiff in substitution for the former Collector. Said Judge Dickinson:

"Although, as we have held, the suit is brought in conformity with the Pennsylvania practice, it does not follow that it has been properly brought. The bond in suit is one called for by the laws of the United States. Suits thereon may in consequence be regulated by the same law. This court has recently held in the case of MacLaughlin v. Philadelphia Barge Company, D.C., 60 F.2d 333 (opinion by Kirkpatrick, J.), that in suits on bonds given to an official for the benefit of the United States the official character of the bond must be preserved by any action thereon being brought by the official in office when the suit is brought, who is the successor in office of the official to whom the bond was originally given, and the act of 1899 amended by the cited act of February 13, 1925 (28 U.S.C.A. § 780), further requires that the official in office must be kept of record in all suits brought by being, within a prescribed time, substituted for the former party when he goes out of office, or otherwise the action shall abate. This latter act does not in terms apply in its abatement features to the pending action, because here McCaughn went out of office before suit brought. The general subject of the act is the 'survival of Actions,' and the substitution is called for

only 'where during the pendency of an action' the officer who is a party to it goes out of office. The act is none the less evidence of the policy of the law of the United States to require that all actions by, as well as against, 'Officers' of the United States, be brought and thereafter kept in the name of those who are in office. As we have said, it is a matter of purely procedural law and of little, if any, practical importance whether the instant action be brought in the name of the official to whom the bond was given or in the name of the one in office when the suit was brought. It is of importance, however, that the practice be settled one way or the other, and the cited case settles it for us. * * *

"This action then under our practice should have been brought in the name of the collector in office when brought."

In the opinion of Judge Kirkpatrick in the MacLaughlin v. Philadelphia Barge Company case, supra, this Court said:

"McCaughn was the proper plaintiff in the former suit, and, if that suit had not been brought, it may be assumed that Mac-Laughlin, the present collector, would be the proper party to sue, in spite of the fact that he is not the obligee in the bond. Judge Hand in Bowers v. American Surety Company [2 Cir.], 30 F.2d 244, 246, and following Tyler v. Hand, 7 How. 573, 12 L.Ed. 824, accepts the theory of fictional personality which recognizes the office as a legal person, and, upon grounds of policy and convenience I think his view should be followed. He says: 'Of the convenience of recognizing an office as a legal person in cases like that at bar there can be no question; the purpose of such bonds is to create an obligation in favor of the incumbents as they succeed each other' ".

In accord with these decisions are Hilton Lumber Company v. Grissom, 4 Cir., 70 F.2d 892; Bryant-Link Company v. Hopkins, 5 Cir., 47 F.2d 1068.

Counsel for the defendants argue that the cited decisions of this Court are no longer controlling, because of the decision of the Supreme Court in Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. That case reversed Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865, which dealt with the authority of the Federal Courts to exercise an independent judgment with respect to questions of general substantive law. I do not understand that that case would have any

bearing on a procedural question such as the one herein involved.

█ Counsel for the defendants also referred to the new Rules of Civil Procedure prescribed for the Federal District Courts, effective Sept. 16, 1938, 28 U.S.C. A. following section 723c. These Rules were not effective at the time the present suit was started (December, 1935), but apart from that fact I find nothing in the Federal Rules of Practice, either new or old, inconsistent with the conclusion in this case that the incumbent Collector of Internal Revenue was the proper legal plaintiff at the time this action was brought.

As to defendants' second contention that the bond was executed under a mutual mistake of law, and that for that reason no action may be maintained thereon by the Government:

It is conceded by the Government that at the time the bond was given to support the claim in abatement, both the Government officials and the defendant Schoettle were of the opinion, based upon the then decisions of the United States courts, that although the Statute of Limitations had run with respect to a suit for the collection of additional taxes, the Government could collect the tax by distraint proceedings (see Toxaway Mills v. United States, 61 Ct.Cl. 363, which was overruled by Bowers v. New York and Albany Lighterage Company, 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676.

The testimony developed the fact that the bond was not given by the defendants until after the request for filing of such bond was discussed by the principal debtor with its counsel and tax auditor.

█ The cases cited by the defendants to support the contention that judgment should be entered for the defendants because of the mutual mistake of law which existed at the time the bond was executed, are those where the defendants were able to show that the plaintiffs would be unjustly enriched if permitted to recover in the various actions. That situation does not exist in the present case. The bond was given for the purpose of staying the collection of tax which had been assessed by the Commissioner of Internal Revenue. The defendant obtained the benefit sought by the giving of the bond, namely, the delay on the part of the Government in proceeding for the collection of the tax and a review of the tax liability. After the

filing of the bond, the Commissioner reviewed the tax liability of the defendant Schoettle, and after reducing the amount of the assessment, decided, after hearing of a further protest, that the assessment should stand in the amount of $19,991.60. Thereafter an appeal was taken by the defendant to the Board of Tax Appeals. During the pendency of the appeal before the Board of Tax Appeals, the decision in the case of Bowers v. New York and Albany Lighterage Company, supra, was rendered. Subsequently, the defendant chose to have the Board of Tax Appeals dispose of the appeal on the Statute of Limitations question, rather than have the merits of the tax claim decided. Hence, from all that appears in the record, the tax may be properly owing on the merits. Under such circumstances, the claim that the Government would be unjustly enriched by the enforcement of the bond in this action is not supported by the evidence.

In the case of Clifton Manufacturing Company v. United States, 4 Cir., 76 F.2d 577, 581, which involved the validity of certain tax waivers, the Court said anent the defense there raised with respect to mutual mistake of law:

"It will be observed, however, from an examination of the cases that in all of them relief was based upon some substantial injustice which otherwise would have occurred, as in the surrender of a valuable interest, without compensation, or the payment of money without consideration; and it may be fairly said that at the heart of the rule which permits equitable relief from the results of a mistake of law or of fact is found the fundamental principle of equity, that no one shall be allowed to enrich himself unjustly at the expense of another; or, as it has been put in England, relief from mistakes of law will be granted if there is any equitable ground that makes it, under the particular facts of the case, inequitable that the parties who receive the money should retain it. Williston on Contracts, § 1582. The real question then in the pending case is whether such injustice would result from the government's retention of the money paid by the taxpayer as would justify the cancellation of the waivers. In our opinion, the answer should be in the negative. It is of great significance that the taxpayer was in truth indebted to the United States for taxes in the amount which it paid. If it should be relieved from this payment, it would be merely because of the failure of the United States to press its claim with the promptness considered reasonable by Congress. Thus the situation differs widely from the decided cases in which a failure to rescind a transaction would have entailed an unjust enrichment of the party against whom relief was sought."

■ I am in entire agreement with the principle above stated. At first glance, it seems to be a great hardship upon the taxpayer that he should be compelled to pay after the Board of Tax Appeals has ruled that suit would be barred by the Statute of Limitations. Again, at first glance, it would seem that equity might well be invoked therefore, to prevent collection of the tax upon this abatement bond. However, the essential test is: Where do the equities lie in this situation? Did the taxpayer actually owe the tax? If the tax was really due, then the real equity lies with the plaintiff. Since the taxpayer chose to premise his appeal to the Board of Tax Appeals on what may well be called the technical defense that the Statute of Limitations applied, and did not, in that proceeding, rest on the merit of his claim, there is no possible basis for any conclusion that the tax was improperly imposed and that it was not due. There is absent, therefore, in this case any proof of "substantial injustice," which would justify invoking the rule extending equitable relief from the results of a mistake of law or of fact.

■ As to the defendants' third contention that the bond was given under duress:

There is no evidence to support such a contention. The fact that the office of the Collector of Internal Revenue notified the defendant that unless a bond were filed proceedings would be taken in the usual course for the collection of the claim, does not support a charge of duress, particularly in view of the fact that it was generally thought at the time that under the law the Government had the right to proceed by distraint proceedings to collect the tax, even though the Statute of Limitations had run with respect to the collection of the tax by suit. Schoettle, had it chosen to do so, could have paid the tax and brought suit for a refund, rather than file the bond. It chose the latter course. I fail to see how a charge of duress can be supported under such circumstances.

The decision in United States v. Wyoming Central Association, 10 Cir., 70 F.2d

869, is pertinent. In that case recovery was allowed to the Government on a bond given to support a claim in abatement. The Court held that under the facts no duress was shown, and that since the bond constituted a separate cause of action (see United States v. John Barth Company, 279 U.S. 370, 49 S.Ct. 366, 73 L.Ed. 743), the Government was entitled to recover despite the fact that the Statute of Limitations had run with respect to the collection of the original assessment by suit, and despite the further fact that collection by distraint proceedings was barred by the same Statute of Limitations. I quote from the opinion of the Court in the Wyoming case [70 F.2d 872]:

"But it is contended that the bond was given under duress. At the time the claim in abatement was filed and the bond given in support thereof, the government, by reason of the decision of the Court of Claims in Toxaway Mills v. United States, 61 Ct. Cl. 363, was proceeding under the theory that while the limitation provision contained in the 1921 act barred collection by suit, it did not bar collection by distraint proceedings. It was not until the decision of the Supreme Court in Bowers v. New York & Albany Lighterage Co., 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676, decided Feb. 21, 1927, that it was known that the holding in the Toxaway case was erroneous. It must therefore be assumed that the collector thought he had authority to collect the tax when the notice and demand was sent to the Wyoming Company. The Wyoming Company was evidently under the same impression, as there is nothing in the record to show that it in any way resisted the payment. In fact the claim in abatement and bond were filed for the express purpose of having the tax reconsidered on its merits, and to delay collection. The Wyoming Company, instead of filing the claim and bond, could have resisted payment, and when sufficiently pressed could have paid the tax and sued to recover it. Instead, it preferred to delay payment and have its validity determined. The exaction of a waiver or bond under such circumstances is not duress. Burnet v. Chicago Ry. Equip. Co., supra [282 U.S. 295, 51 S.Ct. 137, 75 L.Ed. 349]; United States v. Root [5 Cir.], 62 F.2d 385; United States v. E. Hogshire, Son & Co., D.C.Va., 37 F.2d 720; Simmons Mfg. Co. v. Routzahn, supra [6 Cir., 62 F.2d 947]. * *' *

"The bond, which was based on a valid consideration, gave the United States a cause of action separate and distinct from an action to collect taxes. United States v. John Barth Co., 279 U.S. [370], 371, 49 S.Ct. 366, 73 L.Ed. 743; Bryant-Link Co. v. Hopkins [5 Cir.], 47 F.2d 1068; United States v. E. Hogshire, Son & Co., D.C.Va., 37 F.2d 720. In effect, the bond was a contract liability substituted for the tax liability, and was valid and enforceable.

"The decision of the Board of Tax Appeals holding that there was no deficiency, does not bar recovery on the bond. The decision of the Board is no broader than the issue, opinion, and findings. Gulf States Steel Co. v. United States, 287 U.S. 32, 53 S.Ct. 69, 77 L.Ed. 150; United States v. Martin Hotel Co. [8 Cir.], 59 F.2d 549. The Wyoming Company did not prosecute the case before the Board on its merits, but amended its petition and set up the statute of limitations. The Board based its decision of no deficiency solely on the bar of the statute. It did not hold there was no tax liability, or that the tax liability should be abated; it merely held that the enforcement of the liability was barred. Hence the decision of the Board did not abate the tax and thereby discharge the bond; and there existed, notwithstanding that decision, an unabated tax liability which, though its enforcement was barred, constituted a sufficient consideration for the bond.

"This suit is upon the bond. It is predicated on a cause of action separate and distinct from the cause of action which arose on the tax liability. While the latter cause of action is barred the former is not, and the decision of the Board of Tax Appeals is no defense to this action."

See, also, Stange v. United States, 282 U.S. 270, 51 S.Ct. 145, 75 L.Ed. 335, where the validity of a tax waiver was upheld, despite the fact that it was executed after the period of limitations had expired, and despite the further fact that at the time of the execution of the waiver both the Government and the taxpayer were of the opinion that collection could be enforced by distraint (the waiver having been executed prior to the decision in Bowers v. New York and Albany Lighterage Company, supra).

In support of the conclusions reached herein see, also, Belber Trunk and Bag Company v. United States, D.C, 6 F.Supp. 938, and Gulf States Steel Company v. United States, 287 U.S. 32, 53 S.Ct. 69, 77 L.Ed. 150.

As to the defendants' fourth contention that the bond was "satisfied" by the appli-

cation of a partial credit by the Collector on account of taxes for a subsequent year:

This contention is premised on the fact that the Collector credited an overpayment of $1,015.32 for the year 1930 against the liability existing for the 1917 tax. The contention is without merit.

 Defendants' theory is that the payment of any sum on account of the 1917 tax liability would, under the terms of the bond, discharge the entire indebtedness. This claim is made on the basis that the condition of the bond is stated to be "that if the principal shall * * * duly pay any part of such tax found by the Commissioner to be due * * * then this obligation is void * * *." If the defendant is correct, then the payment of a single dollar on account of the obligation would discharge the entire liability for the tax. The language of the bond does not support such a conclusion. Obviously the bond contemplated the ultimate payment by the debtor and/or his surety of such part of the tax as might ultimately be found by the Commissioner to be due, rather than the discharge of the obligation by the payment of only a portion of the tax.

The separate defenses raised by the surety, Central Trust and Savings Company, were as follows:

(1) That there was no consideration for the execution by the surety of the bond;

(2) That the execution of the bond was ultra vires;

(3) That the bond was not accepted by the Government prior to an Act of the Pennsylvania Legislature alleged to forbid the execution of such bonds by banks.

No brief was submitted by counsel for the bank.

 The instrument sued upon being under seal, the defense of no consideration is unavailing, since the seal imports a consideration.

No evidence was offered with respect to the defense of ultra vires.

 The third defense of the surety, with respect to the claim of non-acceptance of the bond by the Government, is not supported by the evidence. Hence, judgment must be entered against both defendants.

### Conclusions of Law.

On the facts found we conclude as a matter of law:

(1) Walter J. Rothensies, the present Collector for the First Collection District of Pennsylvania, and successor inter alia to Blakely D. McCaughn, is the proper party plaintiff in this action.

(2) The bond in this case was not obtained by or given under duress.

(3) The bond is not void for mutual mistake of law.

(4) The obligation of the bond has not been satisfied, except to the extent of the credit in the amount of $1,015.32, heretofore applied by the Collector of Internal Revenue.

(5) By reason of the neglect and failure of the defendants to pay the sum due upon demand by the Collector, the condition of the bond has been breached and has accrued to the plaintiff the right to demand and receive from the defendants the sum of $19,991.60, less the credit of $1,015.32, with interest at the rate of one-half of one per cent per month.

(6) The evidence sustains the judgment in favor of the plaintiff and against both defendants.

(7) Judgment should be entered for the plaintiff and against both defendants.

(8) The defendants' motions for judgment, summary and otherwise, are denied.

A decree may be submitted, in accordance with this opinion, plaintiff to be given his costs.

### Sur Motions for New Trial.

The two defendants above named filed separate motions for a new trial.

The principal defendant, Edwin J. Schoettle Company, urges that the Court erred in its ruling that the action was properly brought in the name of the incumbent Collector of Internal Revenue, although the bond upon which the suit was founded was in favor of a predecessor Collector.

 The pertinent authorities were exhaustively discussed in the brief and argument of counsel for the principal defendant. His principal contention is that the case of Greene County, for use of, v. Southern Surety Co., 1927, 292 Pa. 304, 141 A. 27, is dispositive of the issue in the instant proceeding, and that since the issue is one of substantive law, that under Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, that this Court is bound by that decision.

As to the latter contention there can be no disagreement.

█ I cannot, however, subscribe to the contention that the case of Greene County, for use of, v. Southern Surety Co., supra, is decisive of the present Pennsylvania rule. The Pennsylvania rule, as applicable to the instant proceeding, is stated in decisions of the Pennsylvania Supreme and Superior Courts subsequent to the Greene County case. These later cases include Concrete Products Company v. United States Fidelity and Guaranty Company, 1933, 310 Pa. 158, 165 A. 492; Commonwealth v. Great American Indemnity Company, 1933, 312 Pa. 183, 192, 167 A. 793, and Philipsborn v. 17th and Chestnut Holding Corporation, 1933, 111 Pa.Super. 9, 169 A. 473.

Commonwealth v. Great American Indemnity Company clearly overruled the decision in the Greene County case. Mr. Justice Kephart, who wrote the opinion in the Greene County case, pointedly stressed that fact in his concurring opinion in the Great American Indemnity Company case. He said at page 201 of 312 Pa., at page 800 of 167 A.:

"While I concur in the opinion of the court, it should be pointed out that the decision in this case overrules Greene County v. Southern Surety Co., 292 Pa. 304, 141 A. 27."

The Greene County case was also discussed in considerable detail in Philipsborn v. 17th and Chestnut Holding Corporation, supra, which was decided some six months subsequent to Commonwealth v. Great American Indemnity Co., supra, and it was again pointed out that the Greene County case was no longer the Pennsylvania rule. Said the court in the Philipsborn case at page 11 of 111 Pa.Super., at page 474 of 169 A.:

"The appellant relies upon the general rule of the common law which it claims prevails in this state, that no one not a party to the obligation may sue thereon in an action in his own name. Greene County v. Southern Surety Co., 292 Pa. 304, 141 A. 27.

"* * * we believe that the Supreme Court has definitely changed the rule relied upon by the defendant, and has, by adopting the statement contained in the Restatement of the Law of Contracts by the American Institute, changed the law in Pennsylvania so as to conform with that of near-

ly all of our sister states. It will serve no useful purpose to repeat what Justice Simpson has said in Com. v. Great American Indemnity Co., 312 Pa. 183, 192, 167 A. 793, 797. Under the rule as set out in the Restatement, a beneficiary can assert his rights against the party who has made a promise for his benefit, even if he is not a party to the contract.

"The appellant claims that the above case does not rule the present, for the reason that Justice Simpson, in adopting the Restatement of the Institute in the words following, qualified it by the reference to the act of Assembly: 'We willingly join with our sister states in their conclusion on this subject, especially as the Legislature by the Act of June 23, 1931, P.L. 1181 (8 P.S. §§ 146 and note, 147, 148), has now established our public policy in regard to the matter, by expressly providing for such a provision in all future bonds,' and argues that the adoption of what may be called the 'new' rule for this state applies only to the subject-matter involved in the above case, that is, to contractor's bonds given in the making of public improvements. We do not so understand the language employed. *The passage of the act of Assembly * * * was an additional inducement for the change of the attitude of the Supreme Court in this matter, but did not, if we take the definite language employed, limit its application to any particular class of contracts.*" (Italics supplied).

The other points advanced by counsel for the principal defendant have already been exhaustively discussed in my first opinion.

Counsel for the defendant surety, in support of his motion for a new trial, urges that this Court does not have jurisdiction over the subject matter of the litigation as far as the Secretary of Banking, now in possession of the surety defendant, is concerned. He contends that the plaintiff is limited to the filing of the claim at the time a receiver's account is filed in the State courts. See Act of May 15, 1933, P.L. 565, Art. VII, § 713, 71 P.S. § 733—713.

This defense was not raised prior to the judgment of the Court. An appearance was voluntarily entered on behalf of this defendant and an affidavit of defense filed on the merits.

█ This Court clearly has jurisdiction over the subject matter of the litigation, which in substance is a suit by the

United States on a bond given pursuant to the laws of the United States.

■ If any valid objection existed with respect to the procedure in seeking to enforce the liability of the Secretary of Banking, as Receiver, such objection has been waived in this case by the entry of a general appearance and the filing of an affidavit of defense on the merits. Susquehanna County Auditors' Report, 123 Pa.Super. 195, 187 A. 78. In that case, Keller, J. stated at page 207 of 123 Pa.Super., at page 83 of 187 A.:

"'An absolute want of jurisdiction over the subject matter may be taken advantage of at any stage of the proceedings; but where the court has jurisdiction of the subject matter, an objection based on lack of jurisdiction of the person or irregularity in commencement of the proceeding, or some other exceptional matter, must be raised in limine or it will be waived.' 15 C.J. 847, § 166."

In accord: St. Louis, etc., Ry. Co. v. McBride, 141 U.S. 127, 11 S.Ct. 982, 35 L.Ed. 659. See, also, Rule 12(h) Federal Rules of Civil Procedure.

Other reasons in support of the bank's motion for a new trial have been discussed in my former opinion.

Accordingly, for the reasons stated, the motions for a new trial are denied.